| | |
|---|---|
| CRYSTAL BARTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>HARRIS & HARRIS, LTD., d/b/a HARRIS & HARRIS OF ILLINOIS, LTD.,<br><br>        Defendant. | Case No.: 18-cv-390<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Crystal Bartz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, namely a home internet services bill.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect arose from agreements to defer payment.

6. Defendant Harris & Harris, Ltd. ("Harris") is a foreign corporation with its primary offices located at 111 West Jackson Boulevard, Suite 400, Chicago, IL 60604. Harris operates under the fictitious name "Harris & Harris of Illinois, Ltd."

7. Harris is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Harris is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Harris is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. Harris is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about July 20, 2017, Harris mailed a collection letter to Plaintiff regarding an alleged debt owed to "Wisconsin Electric Power Company d/b/a WE Energies" ("WE Energies"). A copy of the letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the letter in Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, the letter in Exhibit A is a form debt collection letter used by Harris to attempt to collect the alleged debt.

14. The debt referenced in Exhibit A was allegedly incurred to provide utility services to Plaintiff's residence. Thus, the debt was incurred for personal, family, or household purposes.

15. Exhibit A contains the following text:

> Harris & Harris, Ltd., is a collection agency retained to collect your past due account(s) in the amount of $788.36 owed to WISCONSIN ELECTRIC POWER COMPANY/D/B/A WE ENERGIES. Please consider your options and contact us to resolve this matter. The service address(es) for this past due account(s) is listed below. Please note that our office reports some unpaid accounts to the credit bureaus.

2

16. Upon information and belief, WE Energies regularly reports delinquent accounts to credit reporting agencies before sending the accounts to debt collectors such as Harris.

17. Upon information and belief, WE Energies reported derogatory credit information regarding Plaintiff's WE Energies account to the credit reporting agencies before sending Plaintiff's account to Harris for collection.

18. Thus, the statements in Exhibits A to the effect that Harris "reports some unpaid accounts to the credit bureaus" is misleading to the unsophisticated consumer because it implies that Plaintiff may be able to avoid negative credit reporting by resolving the debt with Harris.

19. Despite such representations, resolving the alleged debt with Harris would not allow the consumer to avoid a negative report. The account has already been, and will continue to be, reported to credit bureaus as delinquent, notwithstanding whether Harris reports the account. Exhibit A.

20. The purpose of Harris's credit reporting statement is to deceive the unsophisticated consumer into believing that she still has time to pay the account before having it reflect negatively on her credit history.

21. A debtor that is indebted to several creditors may prioritize payments to creditors who have not yet reported their debts with the purpose of preventing these debts from being reported.

22. Negative items, such as delinquent accounts, both lower a consumer's credit score and generally remain on the consumer's "credit report" for seven years.

23. Falsely implying that an account will not be reported to a credit reporting agency as long as the debtor promptly pays is a tactic that preys upon the consumer's concern about his or her credit score. The consumer is likely to be deceived into paying, whether the debt is legitimate or not, to preserve his or her credit score.

3

24. The false, confusing, and misleading statement about reporting the account to credit bureaus in <u>Exhibits A</u> is a material false statement. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

25. Additionally, upon information and belief, <u>Exhibit A</u> was the first written communication Plaintiff received from Harris.

26. <u>Exhibit A</u> contains the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer under 15 U.S.C. § 1692g:

> **FEDERAL LAW**
>
> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

27. The statement that "our office reports some unpaid accounts to the credit bureas" overshadows the validation notice because it does not indicate whether Harris may report the debt prior to the expiration of the 30-day period.

28. Plaintiff was confused by <u>Exhibit A</u>, and was unsure whether her account had been reported to credit reporting bureaus and whether Harris would report the debt prior to the expiration of the 30-day period specified by the validation notice.

29. The unsophisticated consumer would be confused by <u>Exhibit A</u>, and would be unsure whether the account had been reported to credit reporting bureaus and whether Harris would report the debt prior to the expiration of the 30-day period specified by the validation notice.

30. Plaintiff had to spend time and money investigating <u>Exhibit A</u>.

31. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibits A</u>.

### *The FDCPA*

32. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

33. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

34. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

35. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd,* 868 F.2d 566 (3d Cir. 1989).

36. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan*

6

*Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

37. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

38. The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt". 15 U.S.C. § 1692e.

39. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

40. 15 U.S.C. § 1692f generally prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."

7

41. 15 U.S.C. § 1692g requires that debt collectors make certain disclosures, including disclosing that consumers have 30 days to "dispute" debts, which requires the debt collector to obtain verification of the debt, including, if applicable, a copy of a judgment against the debtor. 15 U.S.C. § 1692g(a)(4).

42. Under federal law, if an alleged debtor disputes a debt within 30 days of receiving the validation notice, the debtor is required to cease debt collection efforts until it has provided verification of the debt or a copy of the judgment against the debtor. 15 U.S.C. § 1692g(b).

43. The debt collector need not verify the debt, however, as long as it ceases its debt collection efforts. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480 (7th Cir. 1997) (collection agency has the option to cease all collection activity or provide verification of the debt).

44. Under the plain language of 15 U.S.C. § 1692g, a debt collector is not required to verify a debt unless the debtor disputes the debt within 30 days of receipt of the validation notice.

45. Whether or not the debtor requests verification of the debt, however, a debt collector's collection activities and communications during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. 15 U.S.C. § 1692g(b).

### *The WCA*

46. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

47. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

8

Case 2:18-cv-00390-DEJ    Filed 03/12/18    Page 8 of 13    Document 1

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

48. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

49. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

50. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

51. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

52. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

53. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

54. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

55. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

56. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

57. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. <u>Exhibits A</u> includes a false, deceptive, and misleading representation that confuse and mislead the unsophisticated consumer to believe that WE Energies has not already been reporting Plaintiff's account to credit bureaus.

59. Harris' misrepresentation is material, as it would provoke the consumer into paying on false pretenses – that the payment would prevent the reporting of delinquent information about the WE Energies Account, when such reporting has already occurred.

10

60. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## COUNT II – WCA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. Harris is licensed as a Collection Agency by the Division of Banking in the Wisconsin Financial Institutions.

63. Exhibits A includes a false, deceptive, and misleading representation that confuse and mislead the unsophisticated consumer to believe that WE Energies has not already been reporting Plaintiff's account to credit bureaus.

64. Harris' misrepresentation is material, as it would provoke the consumer into paying on false pretenses – that the payment would improve or limit damage to their credit score.

65. Harris violated the FDPCA.

66. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

67. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) that was owed to WE Energies, (e) between March 12, 2017 and March 12, 2018, inclusive, (f) that was not returned by the postal service.

68. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

69. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

70. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

71. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

72. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

73. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: March 12, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110

(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com